UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL H., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cv-01591-TWP-DLP |
| | ) |
| NANCY A. BERRYHILL, Deputy Commissioner | ) |
| for Operations, Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Michael H.[1] ("Claimant") requests judicial review of the final decision of the Deputy Commissioner for Operations of the Social Security Administration (the "SSA"), denying his application for Supplemental Security Income (SSI) under the Social Security Act. For the following reasons, the Court **REMANDS** the decision of the Deputy Commissioner.

### I. BACKGROUND

**A. Procedural History**

On August 26, 2013, Claimant filed applications for disability insurance benefits and/or SSI, alleging a disability onset date of January 31, 2008 for degenerative disc disease of the spine and hypertension. (Filing No. 11-2 at 25.) His applications were initially denied on November 21, 2013, (Filing No. 11-4 at 6; Filing No. 11-4 at 15), and upon reconsideration on January 28, 2014, (Filing No. 11-4 at 25; Filing No. 11-4 at 32). Administrative Law Judge Gladys Whitfield

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to not use the first and last name of non-governmental parties in its Social Security judicial review opinions.

(the "ALJ") held a hearing on October 16, 2015, at which Claimant, represented by counsel, and a vocational expert ("VE"), Adolph Cwik, appeared and testified. (Filing No. 11-2 at 45-98.) At the onset of the hearing, Claimant filed a motion to amend his alleged onset date to August 26, 2013. (Filing No. 11-5 at 27.) With the advice of his representative, Claimant moved to amend his alleged onset date based on a lack of evidentiary support to a date after he was last met the insured status requirements under the Social Security Act and resulting in a waiver of his application for disability insurance benefits, but preserving his claim for SSI. (Filing No. 11-2 at 47-48; *See* Filing No. 11-2 at 27 (date last insured of September 30, 2009.) The ALJ granted the motion. (Filing No. 11-2 at 48.) On November 13, 2015, the ALJ issued a decision concluding that Claimant was not entitled to receive SSI. (Filing No. 11-2 at 22.) The Appeals Council denied review on March 13, 2017. (Filing No. 11-2 at 2.) On May 16, 2017, Claimant timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final decision of the Deputy Commissioner denying his benefits. (Filing No. 1.)

## I. STANDARD OF REVIEW

Under the Act, a claimant may be entitled to benefits only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Deputy Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At step three, the Deputy Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[2]; SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

---

[2] In general the standard for determining disability, beyond differing eligibility requirements, is the same regardless of whether a claimant files for disability insurance benefits or SSI. However, parallel regulations exist covering both type of benefits. Citations referenced in cases, as here, may apply to the corresponding parallel regulation for disability insurance benefits, rather than the appropriate SSI regulation, *see e.g.* 20 C.F.R. § 416.945(a)(1). For the sake of simplicity in this Entry, the Court will not reference the parallel regulation unless necessary due to an actual distinction.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Deputy Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

## II. FACTUAL BACKGROUND

Claimant was 46 years of age at the time he applied for SSI. (Filing No. 11-5 at 9.) He has a limited education and previously worked as a lube technician, laborer, corn treater, and chicken house manager. (Filing No. 11-2 at 30).[3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Claimant was not disabled. (Filing No. 11-2 at 35.) At step one, the ALJ found that Claimant has not engaged in substantial gainful activity[4] since August 26, 2013, the amended alleged onset date. (Filing No. 11-2 at 28.) At step two, the ALJ found that he had the following severe impairments: degenerative disc disease of the spine and ischemic heart disease with hypertension. (Filing No. 11-2 at 28.) At step three, the ALJ found that he does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 11-2 at 28.) After step three but before step four, the ALJ found that he had the RFC to:

> lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 4 hours in an 8-hour workday, and sit about 4 hours in an 8-hour workday with normal breaks. The claimant must never climb ladders, ropes, or scaffolds but may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. Claimant may push and pull to the extent stated for lifting and/or carrying. The claimant is limited to work that is free of fast-paced production requirements. He must be allowed to change positions every hour for two minutes while remaining on-task. The claimant is able to understand, remember, and carry out simple instructions and is able to interact appropriately with supervisors and coworkers in a routine work setting. Further, the claimant is able to respond to usual work situations and to changes in a routine work setting (20 CFR 416.967(b)).

---

[3] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

([Filing No. 11-2 at 29](Filing No. 11-2 at 29).)  At step four, the ALJ concluded, relying on the testimony of the VE considering Claimant's RFC, that he was capable of performing his past relevant work as chicken house manager from the amended alleged onset date through the date of the decision.  ([Filing No. 11-2 at 35](Filing No. 11-2 at 35).)

### III.  DISCUSSION

Claimant raises three issues in support of his appeal: A) the ALJ's RFC determination is unsupported by substantial evidence because the ALJ rejected every medical opinion of record and her used her own lay interpretation of the raw medical data, B) the ALJ erred in evaluating the opinion evidence, and C) the ALJ's step four determination is unsupported by substantial evidence because the ALJ's RFC conflicts with the required reasoning level of Claimant's past relevant work.  ([Filing No. 14 at 3](Filing No. 14 at 3).)

**A.  The ALJ's RFC Finding**

Claimant's first conclusory argument seems to assert as a matter of law that the ALJ's RFC finding is unsupported by substantial evidence because the ALJ did not adopt any medical opinion of record and relied upon her own lay interpretation of the medical records in formulating her RFC finding.  ([Filing No. 14 at 20-21](Filing No. 14 at 20-21).)  The ALJ noted that the state agency reviewing consultants had opined that Claimant's heart condition was not severely limiting and that his back pain limited him to work at the medium exertional level, but found that full record had rendered those opinions stale because of support for greater limitations.  ([Filing No. 11-2 at 34-35](Filing No. 11-2 at 34-35).)  The ALJ assigned little weight to the opinions of a treating source, which the Court will address in below in connection with Claimant's later more developed argument.  ([Filing No. 11-2 at 33-34](Filing No. 11-2 at 33-34)).  The ALJ did not adopt any specific medical opinion in reaching her RFC finding.

6

However, an ALJ is not required to adopt a medical opinion as the basis for the RFC. At the administrative law judge hearing level, the ALJ "is responsible for assessing your residual functional capacity." 20 C.F.R. § 416.946(c). The SSA reserves certain administrative findings that are dispositive of a case, including the RFC, specifying they are not medical issues. Social Security Ruling ("SSR") 96-5p (S.S.A. July 2, 1996), 1996 WL 374183 at *2. The ruling explains:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

*Id.* at *4. The Seventh Circuit provides guidance that "an ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz v. Chater,* 55 F.3d 300, 306 n. 2 (7th Cir.1995)). If the record does not contain a medical opinion that is supported by the evidence, the ALJ does not have to choose between poor options, but rather must formulate an appropriate RFC based on all of the evidence.

The Court finds that the ALJ logically supported her RFC finding by referencing the substantial evidence of record that supported her conclusions. For example, the ALJ supported an adverse credibility finding, which Claimant does not directly challenge, by specifically referencing the evidence that the ALJ found to contradict his subjective complaints, including that he needed to be advised to discontinue shoveling snow due to his cardiac issues, (Filing No. 11-2 at 32), and that he had no interest in quitting smoking as a necessary precursor to pursuing surgical intervention to address his back pain, (Filing No. 11-2 at 33).

Claimant notes that the ALJ did not mention what weight she gave the findings of a consultative examination with Patrick Doolan, M.D. ([Filing No. 14 at 20-21](#)). SSR 96-8 does require that the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184 at *7. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). However, the Court does not see any indication that Dr. Doolan made a judgment about the severity, prognosis, or restrictions that result from Claimant's impairments. *See* ([Filing No. 11-7 at 61-65](#).) The restrictions described in the report are expressly reciting Claimant's own reported limitations. ([Filing No. 11-7 at 61](#).) Moreover, the ALJ did summarize the clinical findings of the examination, which do not appear to support any greater restrictions than provided for in the RFC. ([Filing No. 11-2 at 31](#) (citing [Filing No. 11-7 at 62-63](#) (not in acute distress, posture, gait, station, heel/toe and tandem walk, gross and fine motor, sensory, and grip strength all within normal limits, negative straight leg raising tests bilaterally, and full muscle strength and tone)).) The Seventh Circuit has noted that when a medical source's "findings are equivocal and therefore not particularly supportive of either side in this controversy," and the medical source has "failed to venture an opinion as to the extent of [the claimant's] limitations or as to his residual capabilities, the evidentiary usefulness of his findings is slight, at best." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

Furthermore, Claimant presents a valid statement of Seventh Circuit precedent, which has oft-warned against ALJ's "playing doctor" by depending on their own interpretation of medical

evidence without expert assistance. (Filing No. 14 at 20-21 (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Herron v. Shalala*, 19 F.3d 329, 334 n. 10 (7th Cir. 1994); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007)); *see e.g. Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).) However, he does not adequately develop with reference to the facts of this case how the ALJ's review of the updated evidence prejudiced his claim or undermined the ALJ's RFC finding. A valid statement of law conclusively asserted is not enough for the Court to find reversible error as to Claimant's argument that the ALJ's RFC was not supported by substantial evidence. Accordingly, remand is not warranted on this issue.

### B. Treating Opinions

Claimant also contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ erred in evaluating the treating source opinions of Dr. Ungar-Sargon. (Filing No. 14 at 22-24.) Specifically, Claimant argues that Dr. Ungar-Sargon's assessment of his physical capabilities was "entitled to controlling weight, or at least significant weight and should have received some reflection in the RFC." (Filing No. 14 at 23.) He further asserts that the assessment is supported by Dr. Ungar-Sargon's treatment notes, including clinical findings involving Claimant's lower extremities and imaging demonstrating "decreased capabilities in use of his hands." (Filing No. 14 at 22-23.)

Claimant's argument invokes the treating physician rule. In *Scott,* the Court described that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (*See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627

9

F.3d 299, 306 (7th Cir. 2010)). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Id.* (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Id.* at 740 (*See Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Id.* (*See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. § 416.927(c)).

Consistent with the duty noted above to consider and address any opinions that conflict with her RFC assessment, the ALJ discussed Claimant's treatment with neurologist Julian Ungar-Sargon, M.D., Ph.D., and acknowledged Dr. Ungar-Sargon's completed physical assessment dated June 22, 2015, as well as a handwritten statement dated September 1, 2015 indicating that Claimant was "totally disabled from gainful employment." (Filing No. 11-2 at 33-34 (citing Filing No. 11-8 at 90-91 (physical assessment); Filing No. 11-9 at 8 (handwritten statement)).) The ALJ afforded both opinions "little weight" using a similar rationale for both, but additionally noting that the conclusive handwritten statement of disability was a determination reserved to the Deputy Commissioner. (Filing No. 11-2 at 34 (citing SSR 96-5p, 1996 WL 374183 at *5 (Opinions asserting that a claimant is "disabled" cannot be disregarded, but "even when offered by a treating source, they can never be entitled to controlling weight or given special significance.")).)

Focusing on the June 22, 2015 physical assessment completed by Dr. Ungar-Sargon, the Court finds that the ALJ provided good reasons for discounting "extreme restrictions" concerning

10

Claimant's use of his hands and arms for lifting, handling, fingering, and reaching that "are not supported by clinical findings" including Dr. Ungar-Sargon's own treatment notes. (Filing No. 11-2 at 34; citing Filing No. 11-8 at 90 (opining Claimant could only lift ten pounds occasionally, use his bilateral hands to grasp, turn and twist objects ten percent of a workday, fingers fifty percent of the workday for fine manipulation, and arms twenty percent of the workday for reaching).) An ALJ may reasonably discount the opinion of a physician that is not supported by the source's own treatment notes. *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The ALJ accurately observed that the treating records "consistently categorize the claimant as having no difficulty with grip strength or the use of his hands" and moreover that the limitations were inconsistent with even Claimant's own relevant allegations (or lack thereof in this instance in the medical records). (Filing No. 11-2 at 34; *see* Filing No. 11-8 at 2-4; Filing No. 11-8 at 9-11; Filing No. 11-8 at 17-19; Filing No. 11-8 at 26-28; Filing No. 11-8 at 31-33; Filing No. 11-8 at 40-42; Filing No. 11-8 at 45-48; Filing No. 11-8 at 51-53 (all showing a lack of upper extremity complaints or abnormal clinical findings).) While Claimant observes that the ALJ did not mention imaging of his right wrist showing an avulsion fracture and chronic posttraumatic changes, (Filing No. 14 at 23 (citing Filing No. 11-9 at 19)), and Dr. Ungar-Sargon did reference a fractured right hand in support of at least the opined lifting limitations, (Filing No. 11-8 at 90), pointing to a diagnosis alone is insufficient to establish the existence of functional limitations. *Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005) (diagnosis alone is insufficient when not supported by objective evidence of limitation or even subjective symptom allegations in the record); *see Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). The ALJ was justified in discounting Dr. Ungar-Sargon's opinion, given the lack of any corroborating allegations or functional abnormalities combined with the rather significant opined limitations.

11

However, the ALJ's evaluation of Dr. Unsar-Sargon's treatment records are not without issue. Claimant points out that the provider's clinical findings include abnormalities upon examination of his lower extremities. ([Filing No. 14 at 23](#).) However, the ALJ remarked that "[n]uerological findings affirmed absolutely no abnormalities, with fully retained higher functions and no physical findings aside from straight leg raise to 60 degrees on both sides and tenderness in the lower back." ([Filing No. 11-2 at 33](#).) Yet, the examinations consistently revealed hypertonicity and spasm in the muscles around the lumbar spine, reduced muscle strength at four out of five bilaterally in the lower extremities, and "a loss of all modality in the lower extremities" including reduced reflexes and sensation to touch (in the bilateral feet). ([Filing No. 11-8 at 4-5](#); [Filing No. 11-8 at 11-12](#); [Filing No. 11-8 at 19-20](#); [Filing No. 11-8 at 28-29](#); [Filing No. 11-8 at 33-34](#); [Filing No. 11-8 at 42-43](#); Filing No. at 48-49; [Filing No. 11-8 at 53-54](#).) The ALJ is not free to present "only a skewed version" of the evidence and "must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

Given the other evidence of record discussed above that undermines Claimant's credibility, the Court is not necessarily convinced that the ignored clinical abnormalities actually conflict with the ALJ's RFC finding. Notable, the RFC does limit standing and walking to four hours total in an eight-hour workday and further provides for a sit/stand option each hour. ([Filing No. 11-2 at 29](#).) Furthermore, the Court is not necessarily convinced that the ALJ would not be justified in approaching Dr. Ungar-Sargon's assessment overall with considerable skepticism given some of the unexplained limitations noted above. However, the ALJ's inaccurate evaluation of the clinical examination findings does underscore the concern with an ALJ interpreting medical evidence without expert assistance. Without deciding if the ALJ's misstatement of the record evidence

12

would in itself be actionable and given that the Court will find below that Claimant's last argument does necessitate remand for further proceedings, the Court instructs the SSA to also give proper consideration on remand to the demonstrated abnormalities with Claimant's lower extremities.

### C. Step Four Determination

Claimant argues that substantial evidence does not support the ALJ's determination that he could return to his part relevant work as a chicken house manager, because the required reasoning level of that occupation conflicts with the ALJ's RFC finding. (Filing No. 14 at 24-25.)

At step four, a claimant is not disabled if he retains the RFC to perform either: 1) the "actual functional demands and job duties of a particular past relevant job" or 2) the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSA 82-61 (S.S.A. 1982), 1982 WL 31387 at *1. SSR 82-62 requires specific findings in the ALJ's decision as to the first inquiry considering the ability to return to work as it was actually performed, including a "finding of fact as to the physical and mental demands of the past job/occupation." SSR 82-62 (S.S.A. 1982), 1982 WL 31386 at *4. "Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.* at *3. "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." *Id*. Additionally, an ALJ is required to take administrative notice of job information contained in various publications, including the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor. 20 C.F.R. § 416.966(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the

availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

After some preliminary matters during the hearing, the ALJ began the examination of Claimant by asking him for a description of the past work he had performed. ([Filing No. 11-2 at 52-61](#).) One of the occupations he described was as a chicken house manager at Rose Acre Farms. ([Filing No. 11-2 at 54-56](#).) The only description contained in the administrative record of the duties or tasks of that job is Claimant's testimony at the hearing that he oversaw a hen house producing eggs, requiring that he had to go in and pull dead birds in the morning and then make sure the equipment continued to run properly during the day. ([Filing No. 11-2 at 55](#).) Based on listening to his testimony, the VE was later asked to categorize Claimant's past relevant work and testified that the chicken house manager "has a DOT code number of 411.687-018. And it is an unskilled vocational preparation level of two, with a physical demand of medium, according to [the DOT], and an actual exertional level of light, per the testimony." ([Filing No. 11-2 at 86](#).)

In a relevant part of the decision, the ALJ determined that Claimant's RFC included a limitation that he "is able to understand, remember, and carry out simple instructions . . ." ([Filing No. 11-2 at 29](#).) The ALJ posed a series of hypothetical questions to the VE progressively adding more restrictive limitations and one such hypothetical matched the ALJ's ultimate RFC finding, including the limitation to work with simple instructions. ([Filing No. 11-2 at 91-92](#).) In response, the VE initially testified that an individual with those described limitations would be capable of performing Claimant's past relevant work as both a corn treater and the chicken house manager, as those jobs were actually performed by Claimant, but not as they are described in the DOT. ([Filing No. 11-2 at 92](#).)

14

Claimant's representative was a given an opportunity to cross-examine the VE during the hearing, "What I would like to do is first ask, what is the reasoning level for the corn treater, please?" (Filing No 11-2 at 94.) The VE responded, "The reasoning level is two." (Filing No. 11-2 at 94.) Referring to the relevant hypothetical referenced above, Claimant's representative continued, "And she gave you the limitation of understand [*sic*] simple instructions. That job conflicts with that direct restriction. Doesn't it?" (Filing No. 11-2 at 94.) The VE checked the definition of reasoning level two, noting it included the ability "to follow detailed instructions," (Filing No. 11-2 at 94), and responded the question, "Level two would be following detailed instructions, so I would agree with you, detailed would be greater than simple," (Filing No. 11-2 at 95.) Claimant's representative did not ask any questions about the chicken house manager job.

As noted above, the ALJ found that Claimant could return to his part relevant work as a chicken house manager. The ALJ explained:

> In comparing the claimant's light exertional unskilled [RFC] with the physical and mental demands of this light exertional and unskilled past relevant work, the undersigned finds that the claimant is quite capable of performing the duties of chicken house manager as he has performed it in the past. This was further affirmed by independent vocational expert Adolph Cwik, whose testimony is relied upon and accepted in accordance with Social Security Ruling 00-4p.

(Filing No. 11-2 at 35.)

"When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p (S.S.A. Dec. 4, 2000), 2000 WL 1898704 at *4. The ALJ asked the VE at the outset of the VE's examination and the VE affirmed that he understood that he must inform the ALJ of any conflict between his testimony and the information contained in the DOT, as well as provide an explanation for the basis of any such deviation. (Filing No. 11-2 at 35; *see Weatherbee*, 649 F.3d at 570 (the Seventh Circuit held that

the ALJ had met their obligation described in the ruling by addressing the duty at the onset of VE testimony).) However, the ALJ's affirmative duty under SSR 00-4p does not end with asking the VE if their testimony is consistent with the DOT. "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704 at *2. Moreover, the ALJ "will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified." *Id.* at *4. The Seventh Circuit has held that the ALJ's ongoing duty under the ruling continues even if the VE answers incorrectly that their testimony was consistent with the DOT. *See Overman v. Astrue*, 546 F.3d 456, at 463 (7th Cir. 2008). The Court finds that the duty relatedly continues even if the VE simply does not identify a relevant conflict, as here. Still, the Seventh Circuit also later found in *Overman* that "the failure of Overman's counsel to identify the conflicts at the time of hearing is not without consequence. Overman now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00-4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman*, 546 F.3d at 463 (emphasis in original).

Claimant now asserts that like the corn treater job, the chicken house manager job also requires a reasoning level of two and so it too conflicts with the RFC limitation found by the ALJ that Claimant is limited to working with simple instructions. (Filing No. 14 at 24-25.) Because Claimant's representative did not raise the potential for any conflict during the hearing concerning the chicken house manager position specifically, the Court finds based on precedent that the

16

conflict must be obvious and apparent in order to trigger any duty of the ALJ to explain how the conflict was resolved.[5]

The Court finds that the unidentified conflict was obvious and apparent. In an unpublished decision, the Seventh Circuit noted that subjects that are not addressed in the DOT do not constitute apparent conflicts. *Zblewski v. Astrue,* 302 F. App'x 488, 494 (7th Cir. 2008). "When an error in the VE's testimony would require the ALJ to examine whether the requirements of a particular job align with the claimant's limitations, courts have generally found the error to not be sufficiently apparent." *Whitten v. Colvin*, 2014 WL 3509972 at *5 (S.D. Ind. July 14, 2014) (citing *Merritt v. Astrue,* 872 F.Supp.2d 742, 757 (N.D. Ill. 2012); *Russell v. Astrue*, 2012 WL 645937 at *16–17 (N.D. Ill. Feb. 24, 2012)). "However, conflicts that are readily identifiable without requiring additional interpretation by the ALJ meet the standard that the error be sufficiently obvious." *Whitten*, 2014 WL 3509972 at *5 (citing *Dross–Swart v. Astrue,* 872 F.Supp.2d 780, 798–800 (N.D.Ind.2012) (finding that the conflicts were "apparent from the very terms of the positions' descriptions [in the DOT]" and could have been resolved with a quick review of the DOT)). In another unpublished decision, the Seventh Circuit noted that "[a]lthough the conflict was not identified at the hearing, it would have been obvious had the ALJ checked the DOT and it was incumbent on the ALJ to resolve it." *Collins v. Berryhill*, 2018 WL 3783601, at *3 (7th Cir. Aug. 9, 2018) (citing *Pearson v. Colvin,* 810 F.3d 204, 205–06, 210–11 (4th Cir. 2015) (conflict was "apparent," even though not identified at hearing, when VE testified claimant could perform job despite not being able to reach but DOT classified job as requiring reaching)).

Here, consulting the entry in the DOT for the job that the VE testified most closely corresponded with the chicken house manager, as a "laborer, poultry farm," shows that the required

---

[5] The ALJ did not explain in the written decision how any conflict between the DOT and the VE's testimony was resolved; so if properly triggered, the issue would constitute reversible error as a matter of law.

17

reasoning level for the position is indeed level two and furthermore that the listing explicitly contains the definition of reasoning level two referenced by the VE during the hearing. DICOT 411.687-018 (G.P.O. 1991), 1991 WL 673428 ("Reasoning: Level 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.") Had the ALJ performed a quick check of the DOT, she would have been alerted to the fact that the position required a reasoning level that the VE expressly testified was not consistent with the RFC limitation to working with simple instructions. The nonbinding authority noted above indicates that any conflict is obvious and apparent that could be identified by reference to the DOT, so long as it does not require any additional interpretation by the ALJ. That standard would be consistent with the duty noted above of the ALJ to take administrative notice of reliable information contained in the DOT. However, in this particular case, the conflict was even more apparent where the ALJ expressly adopted and depended upon the testimony of the VE and the VE himself supplied any necessary interpretation that the RFC conflicted with the required reasoning level (albeit the same reasoning level that was required by another job title).

The Deputy Commissioner argues that Claimant's argument is misplaced because the ALJ did not find that he could do his past work as that job is generally performed, but rather as the job was actually performed. (Filing No. 18 at 12 ("Thus, Plaintiff's attempt to create a conflict between the vocational expert's testimony and the DOT missed the point because the vocational expert relied on Plaintiff's description of the job rather than the DOT's.").) However, the Court finds the argument unavailing in this case. As noted above, the proper inquiry would be a comparison of the RFC and the description of the job as the claimant performed it, which ordinarily is supplied by the claimant themselves. *See* SSR 82-62. However, the record does not contain

any detailed information about the job beyond responses to limited questions posed by the ALJ to Claimant asking him how much weight he needed to lift and carry and how much of the time he was required or afforded the ability to stand, walk, and sit. (*See* [Filing No. 11-2 at 55-56](Filing No. 11-2 at 55-56).) Those questions provided clarification on the exertional demands of the job as it was actually performed, but did not provide the detailed information required to be sought under SSR 82-62 describing the nonexertional and mental requirements of the job. This deficiency is made apparent by the VE's testimony above when he was cross-examined about his previous testimony that an individual with a limitation to simple instructions could do Claimant's past relevant work as a corn tester, also as that job was actually but not generally performed. The VE did not depend on Claimant's description of that job to determine if it entailed working with more detailed instructions, but rather the VE consulted with the DOT requirements of the job before concluding that it could not be performed with the RFC limitation. The apparent assumption was that the actual job requirements aligned with the DOT requirements, except whereas indicated to the contrary by Claimant's testimony. There is no evidence in the record to support that the type of instructions actually required by the job were less detailed than those typically required. As such, the Court cannot find substantial evidence supporting the ALJ's conclusion at step four, which was based on later contradicted testimony from the VE.

The Deputy Commissioner also argues that "Plaintiff does not point to any evidence in the record to that his condition as it related to his skill level deteriorated to the point where he could no longer perform the job as chicken house manager as he previously performed it." ([Filing No. 18 at 23](Filing No. 18 at 23).) However, the argument is similarly unavailing. The ALJ determined that the evidence supported that Claimant was limited to working with simple instructions. The ALJ reasoned in the decision that the mental limitations were due to Claimant's subjective allegations, as well as

19

arising from the use of pain medication. ([Filing No. 11-2 at 35](#).) Regardless, the ALJ's own RFC finding conflicts with her step four finding based on the reasoning articulated above. Accordingly, the Court determines that remand is necessary for further proceedings to determine if there is any past relevant work or other work that Claimant is capable of performing given his RFC limitations.

## IV. <u>CONCLUSION</u>

The Claimant raises three issues in support of his appeal. This Court affirms the ALJ's finding on first two issues raised. However, regarding the third issue, for the reasons stated above, the final decision of the Deputy Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 9/4/2018

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Howard D. Olinsky
OLINSKY LAW GROUP
holinsky@windisability.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov